UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CODY POWELL, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Case No. 1:21-cv-3001 |
| v. ) ) ) | Judge Robert M. Dow, Jr. Magistrate Judge Heather K. McShain |
| DEPAUL UNIVERSITY, ) ) ) | |
| Defendant. ) | |

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS RENEWED MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

**I.** **Introduction**

The Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA"), by its express terms, does not "apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder." *Id.* at Section 25(c). Colleges and universities -- like DePaul -- who participate in the government's Federal Student Aid ("FSA") program are required to comply with the GLBA's Title V provisions and rules. Indeed, this requirement is expressly mandated in the Program Participation Agreement ("PPA") any college or university – such as DePaul – is required to sign to participate in the FSA program.

Three courts in substantially identical BIPA cases brought by students against their universities have granted defendant-university motions to dismiss, finding the students' claims barred by BIPA Section 25(c). (*See,* Docs. 32-1 (ruling in Bradley University case), 29-1 (ruling in Northwestern University case), and 25-1 and 25-2 (ruling in Elmhurst University case)). In each of these cases, the university-defendants supported their dismissal motions with FSA

program materials – the same ones DePaul relies upon here[1] -- which irrefutably establish that compliance with GLBA privacy requirements is actually imposed by the federal government on all colleges and universities who participate in the FSA program.

A fourth court, in a case against Lewis University (*see,* Doc. 35-1), denied the university-defendant's dismissal request which relied primarily upon an FTC statement in 2000 that "many, if not all" colleges and universities qualify as "financial institutions" subject to the Title V GLBA requirements. But, notably, the defendant in that case did not supply any of the FSA program materials submitted in the three previously discussed cases – as well as here by DePaul – which go well beyond the FTC statement and evidence that FSA program participants are in fact required to comply with the GLBA.

As the Court in the *Lewis University* case correctly noted, the FTC initially had both enforcement and rulemaking authority under the GLBA, but in 2010 the Dodd-Frank Act transferred GLBA privacy rulemaking to the Consumer Financial Protection Bureau ("CFPB"). But the *Lewis University* Court was not informed that the FTC published a rule (313 CFR §313.1(b)) when it had rulemaking authority recognizing universities engaged in the student loan process as GLBA financial institutions, and that the CFPB reissued the same rule (at 12 C.F.R §1016(b)(2)(ii)) in 2014, a rule that remains in effect today. Throughout this entire period, the U.S. Department of Education ("DOE"), which administers the FSA program, has followed these FTC and CFPB rules and required FSA participants like DePaul to comply with Title V GLBA privacy rules as a condition of involvement in the FSA program. DePaul's PPA expressly contains that requirement.[2]

---

[1] *See,* Doc. 15-3 (DOE website listing DePaul as FSA participant); Docs. 15-4 and 15-5 (FSA Handbook materials specifying PPA requirements, including GLBA compliance); Doc. 15-6 (DePaul's PPA, containing the GLBA requirement).
[2] *See,* Doc. 15-6, at General Terms and Conditions, Paragraph 3(f).

Against this backdrop – that DePaul and other FSA participating institutions *actually are subject to GLBA privacy requirements*, that the Court in the *Lewis University* case was not so informed, and that the FTC and CFPB both have issued applicable rules – DePaul addresses below the four specific supplemental briefing issues raised in this Court's March 28, 2022 Order (Doc. 39, the "Order").

## II. Although not entitled to *Chevron* deference, the DOE and FTC statements DePaul cites are entitled to significant respect and weight.

The Order first requests the parties' input on *Chevron* deference, specifically whether it applies to the FTC and DOE statements cited in the prior briefing. In its original motion-to-dismiss memorandum, DePaul cited multiple U.S. Department of Education (DOE) and Federal Trade Commission (FTC) statements, including:

- "[I]nstitutions of higher education (institutions) are financial institutions under GLBA." *See* DOE Letter of Feb. 28, 2020 regarding "Enforcement of Cybersecurity Requirements under the Gramm-Leach-Bliley Act [GLBA]."

- "Under Title V of the Gramm-Leach-Bliley Act, financial services organizations, including institutions of higher education, are required to ensure the security and confidentiality of customer records and information." DOE Dear Colleague Letter of July 29, 2015; *accord* DOE Dear Colleague Letter of July 1, 2016.

- "The [FTC] also received several comments from college and universities and their representatives requesting that institutions of higher education be excluded from the definition of a financial institution. The [FTC] disagrees with those commenters who suggested that colleges and universities are not financial institutions. Many, if not all, such institutions appear to be significantly engaged in lending funds to consumers." FTC, Privacy of Consumer Financial Information; Final Rule, 65 Fed. Reg. 33,648 (May 24, 2000).

*See* Doc. 15 at 3–5.

The Court now asks whether these statements are "entitled to deference under the principles of *Chevron v National Resource Defense Council*, 460 U.S. 837 (1984), and its progeny[.]" *See,* the Order at 2.

3

Regardless of whether the DOE or the FTC has rulemaking authority, the three statements above are not entitled to *Chevron* deference. That is because they appear in letters and a response to public comments. "[I]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 643 (2013) (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)).

Even though *Chevron* deference does not apply, the cited statements do still warrant careful attention and should be afforded significant weight. Agency statements in documents like letters and responses to public comments are "entitled to respect in proportion to their power to persuade." *Id.* (quoting *Christensen*, 529 U.S. at 587). "In determining whether" such statements have "the power to persuade," courts "typically examine the thoroughness evident in [the agency's] consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements[.]" *Mendoza v. Sessions*, 891 F.3d 672, 676 (7th Cir. 2018) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Under this framework, the cited statements have significant "power to persuade" and are therefore "entitled to respect." *Skidmore*, 323 U.S. at 140. These statements reveal that multiple governmental agencies have concluded universities like DePaul are GLBA "financial institutions." The FTC is tasked with enforcement of the GLBA, and the DOE has direct oversight of institutions of higher education.[3] No doubt both agencies have "accumulated a considerable experience" in what the GLBA means and what it requires. *Id.* at 137–38. Produced in the course of their "official duty" and "based upon [their] specialized experience," *id.* at 139–40, these agencies' statements

---

[3] Like the FTC here, the relevant agency in *Skidmore* had enforcement authority over the statute in question. *See* 323 U.S. at 137–38.

evince a longstanding and consistent interpretation of statutory language. The FTC has held this position since at least 2000. *See Miller v. Herman*, 600 F.3d 726, 734 (7th Cir. 2010) ("[T]he consistency of an agency's position is a factor in assessing the weight that position is due." (alteration in original) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 414 (1993))). The FTC, moreover, made its statement in the context of thorough notice-and-comment rulemaking. *See id.* (deferring to interpretations resulting from notice-and-comment rulemaking). All told, the Court should grant a "reasonably high degree" of *Skidmore* respect to the FTC's and the DOE's interpretation. *Id.*

Moreover, prior to 2010, the FTC had rulemaking authority with respect to Title V of the GLBA and in that capacity promulgated 16 C.F.R. §313.1(b), which provided in pertinent part: "[a]ny *institution of higher education* that complies with the Federal Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. 1232g, and its implementing regulations, 34 C.F.R. part 99, and that is also a financial institution subject to the requirements of this part, *shall be deemed in compliance with this part* if it is in compliance with FERPA." (emphasis added) The FTC thus did promulgate a rule consistent with its prior 2000 statement that institutions of higher education significantly engaged in student loans are GLBA financial institutions. If this rule was still in effect, it would be subject to *Chevron* deference, but (as discussed below) it has been superseded by an identical rule promulgated by the CFPB, which is now in effect. But the fact that the FTC promulgated a rule that jibes with its 2000 statement and the several subsequent statements of the Department of Education should permit this Court to give the highest degree of respect possible to these statements and find that DePaul is a GLBA financial institution not subject to Plaintiff's claims per BIPA Section 25(c).

**III.     Although neither the FTC nor the DOE currently has rulemaking authority, the CFBP does—and its rules reinforce DePaul's position.**

The Order next requests the parties' positions on the FTC and DOE's rulemaking authority pertinent to Title V of the GLBA.

As noted, BIPA provides that "[n]othing in this Act shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder." 740 ILCS 14/25(c). Title V of the GLBA, in turn, defines "financial institution" to mean "any institution the business of which is engaging in financial activities as described in section 1843(k) of Title 12." 15 U.S.C. § 6809. Such "financial activities" include, among other things, "[l]ending, exchanging, transferring, investing for others, or safeguarding money or securities." 12 U.S.C. § 1843(k)(4)(A). As DePaul has maintained, this federal statutory language itself confirms that DePaul is a "financial institution" exempt from BIPA's coverage. *See generally* Doc. Nos. 15, 22.

Still, BIPA explicitly refers to "a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 *and the rules promulgated thereunder*." 740 ILCS 14/25(c) (emphasis added). The Court now asks whether the DOE or the FTC "ha[s] rulemaking authority (as distinct from enforcement authority) such that [either's] statements constitute a rule promulgated pursuant to Title V of the GLBA for the purpose of 740 ILCS 14/25(c)[.]" Doc. 39, the Order, at 2.

In short, while the FTC had rulemaking authority prior to 2010, neither the DOE nor the FTC currently has relevant rulemaking authority under the GLBA. Although the FTC currently has some rulemaking authority under the GLBA, that authority extends only to certain motor vehicle dealers. *See* 15 U.S.C. § 6804(a)(1)(A), (C); *see also* 12 U.S.C. § 5519(a) (codifying section 1029(a) of the Consumer Financial Protection Act of 2010). The FTC, though, has

6

enforcement authority over many financial institutions under the GLBA. *See* 15 U.S.C. § 6805(a)(7). If DePaul is a financial institution (it is, as explained presently), then it is subject to the FTC's enforcement authority.[4]

The agency that currently has relevant Title V GLBA rulemaking authority is the CFPB. *Id.* § 6804(a)(1)(A).[5] The CFPB has exercised its rulemaking authority and promulgated rules regarding the definition of "financial institution" under the GLBA. *See* 12 C.F.R. § 1016.3. As relevant here, § 1016.3(l)(3)(i) defines a "financial institution" subject to the FTC's enforcement authority as "any institution" "significantly engaged" in "financial activities" as described in 12 U.S.C. § 1843(k). (That's the same statute describing "financial activities" that the GLBA itself refers to) The CFPB's definition of "financial institution" tracks nearly exactly the FTC's definition of "financial institution," the latter of which governs institutions over which the FTC has rulemaking authority. *See* 16 C.F.R. § 313.3 (FTC rules).

Most importantly, the CFPB has promulgated a rule pertaining to GLBA Title V identical to the prior FTC rule quoted and discussed above:

> Any *institution of higher education* that complies with the Federal Educational Rights and Privacy Act (FERPA), 20 U.S.C. 1232g, and its implementing regulations, 34 CFR part 99, *and that is also a financial institution* described in § 1016.3(l)(3) of this part, *shall be deemed to be in compliance with this part* if it is in compliance with FERPA.

12 C.F.R. § 1016.1(b)(2)(ii) (emphases added). What the CFPB's "financial institution" definition strongly suggests, then, the emphasized language confirms: universities *can be* financial

---

[4] Section 6805(a) divides GLBA enforcement authority among several different agencies. The Securities and Exchange Commission, for instance, has enforcement authority over brokers and investment advisers. Yet as that section's divisions make clear on their face, DePaul would fall within the ambit of the FTC's enforcement authority.

[5] Before the CFPB was created in 2010, the FTC had significantly broader rulemaking authority under the GLBA. *See Privacy of Consumer Financial Information Rule Under the Gramm-Leach-Bliley Act*, 86 Fed. Reg. 70020 (Dec. 9, 2021).

institutions. It follows then that FSA program participants like DePaul *are* financial institutions given their significant involvement in the making of student loans, as the DOE has consistently asserted and implemented as a PPA requirement.

These CFPB rules are entitled to *Chevron* deference. Under *Chevron*, courts "afford considerable weight to an agency's construction of a statutory scheme it is entrusted to administer." *Jeffers v. Comm'r of Internal Revenue*, 992 F.3d 649, 654–55 (7th Cir. 2021) (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). As just discussed, Congress entrusted the CFPB with rulemaking authority to administer the GLBA. The CFPB adopted the rules at issue through notice-and-comment rulemaking. *See Indiana v. E.P.A.*, 796 F.3d 803, 811 (7th Cir. 2015).

From there, "[a]nalysis under *Chevron* is a two-step process." *Jeffers*, 992 F.3d at 654. First, courts "determine whether the statute is silent or ambiguous on the question at issue." *Id.* (citation omitted). Second, if so, then courts defer to an agency's interpretation of that statute so long as it is "reasonable." *Id.* at 654–55 (citation omitted). To receive deference, an agency's interpretation "need not be the only interpretation, or even deemed the *most* reasonable by the courts." *Id.* at 655 (quoting *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009)).

Here, to the extent the Court determines the GLBA's definition of "financial institution" is ambiguous, it should defer to CFPB's implementing rules. Those rules—both § 1016.1(b)(2) and § 1016.3(l)(3)—are a reasonable interpretation of statutory language. They "harmonize[ ] with the language" set forth by Congress, while appropriately adding further implementing detail onto the legislative framework. *Bankers Life & Cas. Co. v. United States*, 142 F.3d 973, 983 (7th Cir. 1998). Moreover, they are "consisten[t]" with previous and contemporaneous interpretations advanced by the FTC and DOE, as discussed above. *Id.* The CFPB rules, in short, bear a rational connection

8

to statutory language. Per *Chevron*, the Court should defer and find that DePaul, given its approved role in the FSA program and the express requirements specified in the FSA PPA materials, is a GLBA financial institution.

IV.     **DePaul's judicial notice materials are appropriate and compel dismissal**

The third issue in the Order the Court asked the parties to address concerns DePaul's judicial notice materials, specifically whether they "confirm DePaul's status as an institution of higher education that engages in student aid and lending funds." DePaul's judicial notice materials most certainly do confirm this, and they are proper for consideration under Rule 12(b)(6).

Based on materials publicly available on the DOE website, DePaul has established that it is an authorized participant in the FSA program, the federal program overseeing loans and other financial aid to college and university students. (*See,* Doc. 15-3) Other FSA program materials publicly available on DOE's website establish that Title V GLBA compliance is a requirement imposed upon every FSA participating institution in its PPA. (*See*, Doc. 15-4 and 15-5) And DePaul's PPA expressly contains this very requirement. (*See,* Doc. 15-6, at General Terms and Conditions, Paragraph 3(f)). Thus -- and Plaintiff did not challenge this in the prior briefing -- it is undisputed that DePaul is "an institution of higher education that engages in student aid and lending funds," the question posed by here by the Court.

Plaintiffs also did not challenge in the prior briefing that this Court could take judicial notice of the above facts under Rule 12(b)(6), nor did they refute the legal authority cited by DePaul (at Doc. 15, p. 8) on this point. Further, the Courts in both the *Bradley University* and *Northwestern University* cases took judicial notice of similar materials in granting Rule 12(b)(6)

motions. [6] As held in *Fernandez v. Zoni Language Centers, Inc.,* 2016 WL 2903274 (S.D. NY May 18, 2016), a case cited by the Court in the *Bradley University* case (at p. 14 of its decision):

> Pursuant to Rule 201 of the Federal Rules of Evidence, a court may take judicial notice, "at any stage of the proceeding," of any fact that is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts regularly take judicial notice of publicly available documents including, for example, public disclosures required to be filed with the SEC (citation omitted), documents retrieved from official governmental websites (citation omitted), and documents evidencing federal enrollments and licenses (citation omitted).

*Id.* at *3. The subject FSA materials, including DePaul's PPA, plainly meet this legal standard and, again, Plaintiff has not challenged the accuracy of any of this information.

**V.    BIPA Section 25(c) is not an affirmative defense, but in any event can be properly determined based upon DePaul's proffered judicial notice facts**

The last issue this Court's Order raises is whether BIPA Section 25(c) "constitutes an affirmative defense." It appears the Court has raised this issue based upon discussion of this question in a footnote in the *Lewis University* decision. (*See,* Doc. 35-1, at pp. 35-36, footnote 18) DePaul's position on this issue is that Section 25(c) likely is not an affirmative defense but, even if it is, dismissal is still warranted here where the only facts outside the pleadings necessary to make the Section 25(c) determination are those supplied by judicial notice.

BIPA Section 25(c) provides that "[*n]othing* in this Act shall be deemed to apply *in any manner*" to GLBA financial institutions. This language supports the view that BIPA simply does not apply at all, in any way, to GLBA financial institutions, rather than that GLBA financial institutions are subject to BIPA but have an affirmative defense they can assert under Section 25(c) to escape BIPA liability.

---

[6] As noted earlier, the defendant in the *Lewis University* case did not submit these FSA program materials in connection with its motion to dismiss. *See,* CM/ECF Docket for N.D. Ill. Case No. 20-cv-7692, at Docs. 50, 51 and 61)

None of the affirmative defense cases cited by the Court in the *Lewis University* decision (*Winforge*, *Brunswick*, *Lewis* and *Brownmark Films*) involved statutes with non-applicability language similar to that in Section 25(c), nor did any of these cases address judicial notice materials presented in support of affirmative defenses. As the Seventh Circuit has held, however, affirmative defenses can be determined on Rule 12(b)(6) motions when the factual basis for the defense is supplied via appropriate judicial notice information. "A 12(b)(6) dismissal based on an affirmative defense 'is appropriate only where the defense is conclusively established by the complaint, concessions made by the plaintiff, *or any other material appropriate for judicial notice.'" Baylay v. Etihad Airways,* 881 F. 3d 1032, 1040 (7th Cir. 2018)(emphasis added, quoting *Arnold v. Janssen Pharmaceutica, Inc.,* 215 F. Supp.2d 951, 956-57 (N.D. Ill. 2002); *see also, Local 25 S.E.I.U Welfare Fund v. Great Lakes Maintenance and Security Corporation,* 55 Fed. Appx. 373, 375 (fn 1)(7th Cir. 2002)("We note that dismissal under Rule 12(b)(6) is appropriate when a defendant raises *res judicata* as an affirmative defense and it is clear from the complaint's face, and *matters of which the district court can take judicial notice*, that the plaintiff's claims fail as a matter of law.")(emphasis added)

Thus, whether or not Section 25(c) is an affirmative defense, this Court can make the Section 25(c) determination using the judicial notice materials submitted here, and should in this respect follow the Courts in the *Bradley University* and *Northwestern University* cases and dismiss Plaintiff's BIPA claims.

## VI.     Conclusion

Appropriate judicial notice materials establish that DePaul is a participant in the FSA program. As such, DePaul is a financial institution under the GLBA given its significant involvement in making loans and other financial aid available to its students. DePaul's

11

participation in the FSA program is expressly conditioned on DePaul complying with Title V of the GLBA. The FTC and DOE statements and former FTC rule relied upon by DePaul in the prior briefing are entitled to significant respect and weight, and the CFPB rules discussed above are entitled to *Chevron* deference. For all of these reasons, DePaul's renewed motion to dismiss should be granted and this case dismissed in its entirety and with prejudice.

Dated: April 11, 2022                Respectfully submitted,

                           DEPAUL UNIVERSITY

                           By: /s/ *Michael D. Hayes*
                              One of Its Attorneys

Michael D. Hayes
Karen L. Courtheoux
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
Phone: (312) 655-1500
michael.hayes@huschblackwell.com
karen.courtheoux@huschblackwell.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of April, 2022, I caused the foregoing, **Defendant's Supplemental Brief In Support Of Its Renewed Motion To Dismiss Plaintiff's First Amended Class Action Complaint**, to be served on Plaintiff's counsel of record via the CM/ECF filing of this document.

/s/ *Michael D. Hayes*